24-2070, Mr. Schwab. Good morning, Your Honors, and may it please the Court. I'm Jeffrey Schwab and I represent Plaintiff Appellant, the Rio Grande Foundation. The provision in New Mexico's Campaign Reporting Act requiring donor disclosure of ads that mention but do not expressly or implicitly advocate for or against a candidate or ballot question violates the First Amendment on its face. Three points support this conclusion. First, the Rio Grande Foundation's speech, which simply mentions candidates but does not expressly or implicitly advocate for or against their election, is not for the purpose of influencing the outcome of an election. And the district court's conclusion that speech that refers to a candidate or ballot question without expressly or implicitly advocating for or against them could still be published for the purpose of supporting or opposing a candidate or ballot question is wrong. Well, let me ask you about the, let's start with what the statute says because that's going to be important to the analysis. So we're talking about disclosures of independent expenditures, right? Correct, Your Honor. And an independent expenditure has to be an expenditure, is that correct? That's correct, Your Honor. And an expenditure is something that's a payment incurred in an election, let's see, or other thing of value just, I should just read the language, but it ends with for a political purpose. It has to be made for a political purpose. That's correct. And political purpose means for the support, for the purpose of support or opposing a ballot question or the nomination or election of a candidate. So you agree that to be an independent expenditure by statutory definition, it has to be for the purpose of supporting, in this context, the nomination or election of a candidate, of supporting or opposing. Correct. You agree with that? I agree with that, yes. The provision you're talking about now is 3C. That's right. And you say because 3C is obviously in addition to the requirements in 3A and 3B, it's got to be something different. That's right, yes. And here's where I don't understand your point. 3B says if it's an expenditure that is made to pay for an advertisement that is susceptible of no other reasonable interpretation than as an appeal to vote for or against a clearly identified candidate. Therefore, C could include something where there's a reasonable interpretation that it's to support a candidate, but it's not the only reasonable interpretation. And you seem to say it's got to be an expenditure that could not reasonably be interpreted as supporting or opposing a candidate. But I think there's a broad area in between where it could be reasonably interpreted one way or reasonably interpreted the other way. I don't think that's correct, Your Honor. I think A applies to express advocacy, advocacy that everybody would know is advocacy because it has the magic words or it's pretty clear. I think B is something that is not so clear, but a reasonable person would understand it as advocacy. There's no other interpretation of this expenditure except as being to support a candidate. I don't think it's that clear. I think it's susceptible to no other reasonable interpretation. The only reasonable interpretation would be that it's to support a candidate. So if there's a possibility of a reasonable interpretation that it's not to support a candidate, and also a reasonable interpretation that it is to support a candidate, then it's not covered by 3B. And 3C would include that. I still don't think that's true. I think if there's any reasonable interpretation that it is in support or in opposition to a candidate or ballot question, it would be covered by B. Because B follows language of Citizens United. And Citizens United, they use this same susceptible to no other reasonable interpretation language. And they also sometimes call it the functional equivalent of express advocacy. I call it implicit advocacy. I think those are all the same things. So I think that A covers express, B covers implicit or something that... I have a hard time reading B the way you do. But if the Supreme Court in Citizens United interpreted this exact same language the way you did, that would be pretty persuasive to me. And it makes a difference in how your argument goes. Whether C could include contributions or an ad that could be interpreted as supporting a candidate, but may not. For example, the sort of ads that Rio Grande produces that just rates candidates and doesn't say whether that's good or bad necessarily. Well, I guess it probably says it's bad. But someone who gets a low rating from Rio Grande might run for office saying, hey, look, I'm great. I oppose everything that this organization supports. I don't think Rio Grande Foundation's speech would be covered by B. And I don't think it's also reasonably to interpret it as any kind of advocacy for or against the candidate for a couple of reasons. One is, just pointing to the Freedom Index. I think there's a link in the appellee brief. If you haven't looked at it, I'd encourage you to look at it. But on their website, the Freedom Index, all it does is a legislative scorecard of pieces of legislation based on, I think there's 12 indices of things that Rio Grande Foundation finds important. There's things like government size, taxes, constitutional provisions, equal protection, things like that. And then for each piece of legislation, they give a yes or no vote, a score, somewhere between negative eight and plus eight, depending on what number of issues are involved in that legislation. And then they total up the score. It's a high score. Right. But it would tell people on the Rio Grande mailing list that this is someone you should support if you like what we do. But the Freedom Index doesn't say anything about the candidacy. It doesn't say anything about go vote for this person. Well, but it's not subtle about it. I mean, if you just looked at it and it just had the scores, maybe. But it also happens to be color coded in a way that, again, green, wouldn't a member of the public say, well, this person got a score that's green. Therefore, under Rio Grande Foundation's view, green means go. I should vote for that person. Isn't that obvious? No, because the green is... So because the scores are plus eight to negative eight, the green is just plus and the red is negative. So it doesn't say plus five or negative five. It says five in green or five in red. So I don't think that it's a subtle, these are good people, these are bad people. It's just, this is the score. And if it's green, it's plus. If it's negative, it's not. I'm kind of where Judge Federico is that I think people would take that as a support. But say no reasonable person could interpret this ad, this publication by Rio as endorsing candidates, then wouldn't it be very hard to show that it was made for a political purpose and therefore would not be an independent expenditure that has to be disclosed under the New Mexico statute? Well, first of all, the parties agree that if Rio Grande were to spend the requisite money under C, they would be required to do that. I think that there is a decent argument that because it has to be for a political purpose, that section C ads that aren't for a political purpose shouldn't be covered by... And that's what I argued before the district court and the district court disagreed with me. I said that section C was in conflict with the definition of political purpose. The district court disagreed with our argument on that and said that no, it can be for a political purpose under C, even if it doesn't... Can we defer to the district court on how to interpret the statute? I don't think we have any deference required in that respect, do we? I don't think so. I hope not. Okay. So if it's not for the purpose of supporting or opposing a candidate, it's not an independent expenditure, period. Isn't that correct? Yes, but if that's so... I would find it hard to find that something was for a political purpose, an ad was for a political purpose, if there's no possible reasonable interpretation that this is to support a candidate. I think I agree with you, and I think that's sort of my point, is that these ads... That's a statutory argument. It has nothing to do with your constitutional arguments, but I think... Well, I shouldn't say it has nothing to do with it. You might prevail on a statutory ground, and I think you might, but you're saying that even if it's banned by the statute, you have constitutional arguments. Well, if it is banned by the statute, then I think we have a constitutional argument, but if it's not for a political purpose, then I don't think it applies, but the defendant says that it applies to us, so Rio Grande Foundation's speech is chilled either way, because they're not going to spend the money to put these ads when they think that they're going to be subject to the statute, and so they have to bring it before this court so that they can speak without having to worry about being subject to the statute, and if the statute doesn't apply to them, then I think that there should be an order from this court explaining that speech that is not for a political purpose is not covered by the independent... I'm just looking at the definition. Let me get to the constitutional issue. I didn't expect to spend as much time on the preliminary part, but as I read Citizens United, purpose is not necessary to have a constitutional disclosure requirement. In Citizens United, I'm paraphrasing, and you can correct me if I'm misparaphrasing, I thought the one rationale for allowing expenditure disclosures, independent expenditure disclosures, was that the public has a right to know who's saying something about a candidate in the time just before the election. It had nothing to do with whether the person is saying something about the candidate for a political purpose. It said that, and that, as I read Citizens United, was the only rationale given to support the constitutionality of the disclosure requirement. Am I misreading Citizens United? I think maybe reading into it, I would say, because Citizens United dealt with an as-applied challenge to a specific ad. The ad was for Hillary the movie, and the Supreme Court in Citizens United, Senator Clinton's campaign for president. And so in that case, I think if it was, say, subject to New Mexico's statute, it would fit into that section B, because it's susceptible to no other reasonable interpretation. The Supreme Court could have said, in finding the application of the statute constitutional in that case, that the public has a right to know about anyone who's expressing support or opposition to a candidate in the brief time before the election. But it didn't. And we take their dicta really seriously in the lower courts. And it sure seems to me that it's saying, this statute is constitutional because it has the purpose of educating the public about what is said about a candidate in the short time before the election. And that would seem to foreclose your argument. Tell me what I'm missing here. I think there's a few reasons. One is the Supreme Court in Citizens United, when they address disclaimer and disclosure requirements, they address the disclaimer requirements first. And the argument that they made for why the disclaimer requirements were constitutional was because they said that the voters had a right to know the arguments being made about the candidate or whoever. And in applying that to the disclosure requirements, if it's not an appeal to support or oppose a candidate, there's not an argument being made to the voters. So that rationale doesn't apply. A couple of other reasons that Citizens United is distinguishable. One is both Citizens United and this court's decision in Independence Institute, I see my time's up. Should I finish my point? Both of those cases were decided before the Supreme Court's decision in Americans for Prosperity versus Bonta. In that case, the Supreme Court added a narrow tailoring requirement to the exacting scrutiny. Neither Citizens United nor Independence Institute applied the narrow tailoring analysis. And I think in this case, applying the narrow tailoring analysis makes a difference because if you remove section C3 from the act, you still can achieve the government's informational interest because it will cover express and implied ads that are seeking to support or oppose a candidate. And that covers what the government's interest is. I'll stop. Well, actually, don't stop. Let me just ask you. So I don't think you've ever gotten your actual argument on constitutionality out. So maybe let me try. So A is express advocacy. B is implicit advocacy. And that's all that you can regulate under the Constitution. Is that what you're arguing? In this context, yes, because it doesn't support the government's interest under the exacting scrutiny analysis because section C3 adds just the way that the statute is structured is different from the way that the statutes in Citizens United and Independence Institute were structured. In this case, in Independence Institute, this court said that it was difficult to find a principle to distinguish between speech that's essentially express or implied advocacy and that's not. In this case, the statute actually does that work for you because it sets forth three categories of speech, two of which are express or implied, and the third of which is just speech that mentions a candidate. In Independence Institute, in those statutes, they didn't do that. They just applied to what they called electioneering communications. And that just, there was no distinction between express or implied advocacy. And so I think that makes a difference. It is also notable that in both of cases, those electioneering communications didn't apply just to independent expenditures. They applied to any communications. Well, not any communications because there's a limit on the communications, but all communications regardless of who they are made by. And I think that makes a difference because if it's an ad that just mentions a candidate but it's either coordinated with a campaign or by a campaign, I think there it makes sense to say that that is actually maybe implied advocacy because it's from a candidate who might be opposed or in support of another candidate. Whereas here, they're just independent expenditures. So they're not coordinated with a candidate or campaign and they're not by a candidate or campaign. So it's just a third party speaking who happens to mention a candidate. So I think that makes a distinction between this case and those two cases as well. Thank you. This is important. Thank you. Two what I think may be housekeeping questions. One is you mentioned exacting scrutiny. I think twice here today. Your brief, you argued we should apply strict scrutiny. I think you said just to preserve that argument. So do you agree that Supreme Court precedent, including Bonta, requires that we apply exacting scrutiny here? I do agree, but I think the Supreme Court should apply strict scrutiny. You can take that up with that. I will. But I will say that's because the Supreme Court says that political speech is the most important speech and also in Reed versus Town of Gilbert, it said that content-based restrictions on speech are per se unconstitutional. And in that case, there was a sign and it treated political speech, the political signs, more favorably than a directional sign. It's very weird to say that if it was the opposite, that that would not have gotten strict scrutiny if it treated a directional sign more favorably than a political sign that should not get strict scrutiny. And that's essentially what we're saying here. I think that's strange. So I do preserve that argument for the Supreme Court. Understood. And second question is, because this is a facial challenge, who has the burden here? Well, I think we have the burden, but I think that it's a pretty, it's pretty clear that all of the, in fact, the reason that this is different than Citizens United and Independence Institute is because the statute differentiates between these three categories of speech. Every instance of the speech in Section C3 will not actually be, either be expressed or implicit advocacy. So they're all just mentioning a candidate or ballot question, but not advocating for or against them either expressly or implicitly. So there, it makes it, I think it makes it easier to show that in all of the iterations of those, that speech, that it would be unconstitutional. Thank you, counsel. Thank you. Ms. Venegas. May it please the Court. My name is Ellen Venegas on behalf of the New Mexico Secretary of State Maggie Toulouse Oliver. This case is about whether a special interest group can override the state of New Mexico's efforts at election transparency. Specifically, the case involves the state's requirements for limited disclosure for funding sources of political advertisements, which the statute at issue refers to as independent expenditures. RGF has chosen to bring a facial challenge to the disclosure regime, taking part with one definition of the independent expenditure section, and I think that definition bears repeating in full here. It applies to an advertisement that refers to a clearly identified candidate or ballot question and is published and disseminated to the relevant electorate in New Mexico within 30 days before the primary election or 60 days before the general election at which the candidate or ballot question is on the ballot. Now, the Supreme Court recently reiterated that facial challenges, even in the First Amendment context, are hard to win. And RGF doesn't meet its burden, its heavy burden to show there are any unconstitutional applications of the statute here that would outweigh the constitutional applications. In fact, on this record, RGF hasn't shown that there are any unconstitutional applications of the statute because its arguments are premised on asking the Court to draw a line that courts have consistently refused to draw. Can we start again with what the statute means? Because apparently the district court read the statute differently from what I think it clearly says, and apparently the district court interpreted it the way you do. So I want to understand if you read the statute, understand how you read the statute. So to be an independent expenditure, it has to have a political purpose. Do you agree with that? Correct. So it has to be for the purpose or support of, in this context, the nomination or election of a candidate. You agree it has to be? Yes, the expenditure, yes. How do you read 3B? I read it as saying that the advertisement that has to be disclosed can only be interpreted as appealing to vote for or against the candidate, not that it could reasonably. If there are reasonable, if you could reasonably read the advertisement both ways, for example, what probably would be the case for what Rio Grande wants to do, which is just list candidates and gives them a rating. Do you think it comes under 3B? Your Honor, I don't think, first of all, I do read 3B how you are, that it has no other interpretation other than an appeal to vote. And I think the Freedom Index highlights why the temporal components in Section 3C are so important here. If I were to receive a copy of the Freedom Index in the mail six months before an election, I might not view the only reasonable interpretation as an appeal to vote. I think that answer could change within the temporal limitations identified in Section 3C. And I think that is a good example of why the categories, they're not as, you know, as exclusive as RGF contends. And given the temporal aspects of Section 3C, a communication could be interpreted differently closer in time to the election. I read your response to say the Freedom Index fell under 3B. Is that right? I believe the parties agreed below that the Freedom Index fell under 3C. Okay. And again, Your Honor, I think maybe at some points in time it would fall under 3B, but at any given time, I don't believe it would always fall under 3B. So it's not the green and the red, you know, go versus stop, you know, vote for this person, go and stop, don't vote for this person. It's the timing element that may put it between B and C? I think it's a combination of things. Individuals look at communications differently that they receive in the mail and evaluate them differently depending on whether there's an election in the near future. So even with the rating, receiving that communication far away from an election, it may be viewed differently. What if the Rio Grande Foundation sent out a mailer to New Mexican voters 30 days before an election that said, reminder, election day is this date? Here are the candidates running for this office. And that was all. They were sort of equally presented. Would that fall under the 3C and require disclosure? Your Honor, there is an exemption under the advertisement definition in the statute that exempts things that qualify as nonpartisan voter guides. So if that qualified as a nonpartisan voting guide, then it would not fall under... So I guess that's really what I think we're trying to get at is what is the distinction here? Because as Judge Hartz mentioned, one could read Citizens United, in our case, applying it in an independent institute to say it's not required that it have a political purpose because the state has an interest within a certain time frame of requiring disclosure of who's funding any communications about candidates. And first of all, do you agree with that premise? That the ad doesn't need to have a political purpose? Not under the statute, but we could read Citizens United that way. Correct. Okay. And so the statute seems to do more than perhaps is required. And so ads like this that may fit into another exemption, another part of the statute, just trying to figure out for where the boundaries are. Like what work does 3C do at all is what I'm trying to figure out. Sure. I think 3C serves to capture communications that are not so express as to amount to express advocacy, but are more subtle in their messaging and could contain a level of implied advocacy. And I think with RGF's argument, they're sort of downplaying the informational interest that the state has in the information that is important to voters to assess. So for example, if a voter was sent a communication that spoke favorably about a new ballot measure or just said this ballot measure will help our community, something broad like that, but didn't expressly advocate voting yes or no on the ballot measure, a voter still has an interest in knowing who funds that because it could be that all of funding is coming from out of state, or it could be that a majority of the funding is coming from a corporation that might be benefiting from the tax. That kind of information is helpful in evaluating the message. I'm going to challenge that. I think the Supreme Court has said otherwise. Would you say that's helpful? But all it does is mean we're making ad hominem arguments, which is what everybody does in politics these days. Do you think that's really so helpful? Don't you think it would be good if we actually addressed issues instead of who's supporting it? I think both are important, Your Honor, and I agree. If we could just really stick to the issues, that would really be an ideal situation. But unfortunately, that's the voters' only interest in knowing who's paying for this ad is ad hominem analysis. The Supreme Court and other courts have also... I'm agreeing with you. No one seems to agree with me on this point, but I just thought I'd raise that. If you're going to say that's a good reason, I wanted to challenge that. Okay, understood, Your Honor. Yes, I think the courts have recognized sort of a value to voters in what weight to place on the message, and some of that does come from knowing who's behind the message, which could conceivably distract from the issues. But here... I'm sorry, if the contours, though, of what is Captioner 3C seem to me from what you have presented here today are somewhat unknown, then how is the CRA here distinguishable from the Wyoming law that we analyze in Wyoming Gun Owners? Sure. Well, I think we don't have an argument here, like in Wyoming Gun Owners, that the statute is vague. There's no vagueness challenge. There's no... When considering exacting scrutiny, we also have to examine the burdens of disclosure vis-a-vis the state's interests, and we don't have any arguments from RGF about the burden themselves, the disclosure requirements being unclear, onerous, or hard to understand. It's just an argument about what type of communications the state may lawfully regulate. In the Section 3 definition, it closely tracks the federal definition of electioneering communication and other states' disclosure laws as well, so I think regardless... It tracks except for... New Mexico's statute requires a political purpose. These other statutes don't require that, isn't that correct? That's true. The New Mexico statute requires that the expenditure be made for a political purpose, which doesn't necessarily require that the ad itself be assessed as to whether it has a political purpose, and I think, you know, there could be some room for improvement with the wording of the statute, but the provisions can be read in harmony here. I think it's pretty clear what the legislature is intending to regulate by Section 3, given that it tracks the disclosure regimes of many other governments. How did the district court interpret 3b? The opposing counsel suggested that the district court said if the advertisement could be reasonably interpreted as supporting or opposing a candidate, then it fits within 3b. Is that how the district court interpreted it? I don't believe so, your honor. I believe the district court interpreted it as we proposed in our briefing, which is that 3b has to be so expressed that there's no other reasonable interpretation but as an appeal to vote, and then the district court found that there's some room there between no other reasonable interpretation and then a possible reasonable interpretation of advocacy. Counsel, I'm sorry, you said something a moment ago that kind of tripped me up a little bit about the there's no evaluation of the ads themselves, whether or not the disclosure is triggered. It's really the expenditure, so if it's made with the intent for a political purpose, but how is that ever determined? Maybe I just misheard you. I was identifying that the statute itself requires that the expenditure be for a political purpose, so it's not the ad that is subject to a political purpose interpretation, and so our position would be that these provisions can be read in harmony and that listing the types of advertisements will be covered. The legislature is indicating what it sees as spent, like when money spent would be spent for a political purpose by spending large amounts of money on those advertisements, and to the extent there is any conflict within the statute itself, I agree with Judge Hartz, but you had brought up that this would be a statutory issue and not a First Amendment violation. Well, I think I was saying how we interpret it. Well, again, that's our constitutional analysis. That's correct, Your Honor, but again, we don't have any argument here that the statute is vague or that RGF doesn't understand what's required of them. They just don't want to comply with the disclosure requirements. Counsel, can I ask you to define what you think a state can regulate in terms of speech? What's the outer rim of your authority? I think that the outer bounds would just be what is covered in our statute here and it's very similar to what is commonly called electioneering communication, so it's something that mentions a candidate or ballot issue in the days before an election and is also disseminated to the relevant electorate. So anything that mentions a candidate before an election, you can regulate? That's how you're defining it? Almost anything. There are some exceptions which are listed in the definition of advertisement and so, for instance, communication solely to the members of a group, those are exempted. Nonpartisan voter guides, as I mentioned before, there's newspaper editorial exemption, so those types of things are not included in that. When you say regulate, that's pretty broad. You're just talking about, I hope you're not endorsing regulation other than disclosure of funding. No, Your Honor, sorry. I'm just, this case is limited to the disclosure requirements, so when I say regulate, I'm thinking about disclosure requirements. Counsel, same question I asked to Rio Grande about burdens. Do you agree with their response here? I mean, this is a facial challenge, which typically they would have the burden, but we're also talking about, you know, they've raised a constitutional challenge on this disclosure requirement, so how do you see the burdens here? So, the state has the burden to prove exacting scrutiny, but RGF does have the burden in this facial challenge, and that brings me to a point I wanted to raise about RGF's asserted burdens, which, again, don't talk about the actual disclosure requirements, but are based on, I see my time is up. They're based on the asserted chilled First Amendment rights, but when talking about burdens, even though we have a facial challenge, we're once again back in sort of as applied territory, where all RGF has shown is one declaration about its own situation, and that declaration was from 2020. It's the same thing they showed for standing, and years later, we don't have any additional evidence to show any burden on RGF or any other in New Mexico. Thank you, counsel. Thank you. I think appellate leave went over time, as I recall. Cases submitted. Counselor excused.